GLENN ALLEN JACKSON *v.* STATE OF ARKANSAS

5544                            460 S. W. 2d 767

Opinion delivered December 21, 1970

*Eugene Coffelt* and *M. Gary Kennan,* for appellant.

*Joe Purcell,* Attorney General; *Milton Lueken,* Asst. Atty. Gen., for appellee.

J. FRED JONES, Justice. On April 3, 1970, the appellant was arrested and charged with the crimes of burglary and grand larceny in Benton County. He was accused of entering the home of Lloyd Stevens and taking a radio belonging to James Haddock. On April 10, he entered pleas of guilty to both charges in the Benton County Circuit Court and was sentenced to the penitentiary for two years on the burglary charge and to one year on the larceny charge. On May 6, 1970, the appellant filed a motion to withdraw his pleas of guilty, and on June 2, 1970, a hearing was had on the motion. From an order denying the motion, the appellant has appealed to this court, and relies on the following point for reversal:

"The trial court erred in overruling appellant's mo-

tion to withdraw his plea of guilty."

In his motion to withdraw his pleas of guilty the appellant alleged that he was not guilty, and that the only reason he entered his pleas of guilty was that he was told by the arresting officer that there were three eye witnesses who saw him take the radio, and that he (the appellant) felt that it would be useless for him to defend against the charges if there were three eye witnesses who would testify against him.

Upon his pleas of guilty the appellant was thoroughly advised of his constitutional rights by the trial court and this is not questioned. Under questioning by the court, the appellant testified that he is 25 years of age; that he did not know he took the radio. He stated that he lived at Big Flat, Arkansas, but had not been home in about eight months; that he had just "been all over." He stated that he was AWOL from the Army and had been for a little over two years. He stated that he had been in prison in Fort Leavenworth for going AWOL from the Army; that he was supposed to report to Fort Dix when he left Leavenworth, but did not do so. He admitted that he had previously been convicted of one felony involving a stolen automobile. He stated that his parents were still living at Big Flat, and that his sisters and brothers were living in Benton County. He stated that he understood the charges filed against him; and stated that he did not desire the services of appointed counsel.

At his hearing on the motion to withdraw his pleas of guilty, the appellant testified that he does not believe he is guilty of the charges on which he entered his pleas of guilty. He testified that Police Officer Wright told him that there were three people who saw him take the radio, and that in a roundabout way, Officer Wright told him that he might as well plead guilty because he was going "to be stuck." In explanation, he testified that Officer Wright stated: "Let's make a full statement. There's three witnesses seen that you done it." The appellant testified that he felt it would

be useless to hire an attorney to defend him, when three eye witnesses could prove that he did it. He testified that he had no money with which to pay an attorney, but that he did not ask the court to appoint counsel for him because he did not see any need of it at that time. The appellant testified that after his pleas of guilty were accepted by the court, and after sentences were pronounced, his brother advised him of the name of the witnesses referred to by Officer Wright, and that these witnesses had denied that they made the statements attributed to them by Officer Wright.

On cross-examination the appellant testified that when he was first arrested by Officer Wright he was only told that he was being arrested for grand larceny and burglary, and that it was after he was lodged in jail that Officer Wright told him that he had three eye witnesses to the offense. He testified that the reason he qualified his answer by stating "I don't believe so" when asked, on direct examination, if he was guilty, was because he was so drunk at the time he wasn't capable of doing anything like that. He testified that he knows now that he did not take the radio because after he thought it over he just knows he could not have done it. The appellant admitted that he understood the proceedings taking place at the time he entered his pleas; that he understood the nature of the charge; that it was a felony, and that he could be sentenced to the penitentiary upon his pleas of guilty.

Lloyd Stevens made an affidavit which appears in the record in which he states that he never did sign any statement to the effect that Glenn Jackson took a radio from his residence. He states, however, that he told the officers that he *thought* it was Glenn Jackson. In his affidavit Mr. Stevens then stated as follows:

"The truth of the matter is that the incident of the taking of the radio from my home occurred after dark and it would be impossible for me to identify the party under the circumstances existing.

I had been at the home of Preston Jackson, who is

a brother of Glenn Jackson, where my wife was babysitting for Preston Jackson, and Glenn Jackson appeared at said residence on foot and I loaned him a dollar; after loaning him a dollar, he left on foot while in an intoxicated condition.

In about ten minutes, I left the Preston Jackson residence on foot after seeing a blue Buick car, which I later learned, stopped at my residence and when I approached the vehicle, I observed that some individual ran from my house carrying an object which looked like the reported stolen radio, got in the blue Buick car and sped away. As to who the individual was, I am not in a position to say and could not under oath identify the party who took the radio and drove away from my home."

Officer Wright testified that on the night in question he received information over the police radio concerning a stolen radio and another report, about the same time, concerning a stolen automobile belonging to William R. Spears. The officer testified that he found the automobile out of gas parked on the side of the highway, and that the radio which was reported stolen, was found in the automobile. He says that he then went to where the appellant was staying and arrested him for investigation of burglary and grand larceny. He testified that he told the appellant he had reason to believe that the appellant had stolen the automobile and the CB radio. He says that the appellant was considerably intoxicated and that he did not attempt to discuss the case with him until after he had been lodged in jail. He says the police at the jail permitted the appellant to make one telephone call, and that later in the morning they brought him downstairs in the jail and advised him of his constitutional rights. Finding that the appellant was still under the influence of alcohol, the officers did not take a statement from him which could be interpreted as admission of guilt. Officer Wright denied that he made any statement to the appellant about three eye witnesses. He says, however, that he did read to the appellant a statement

he had written as to what Spears had told him. Officer Wright's testimony concerning the statement appears as follows:

> "It says, 'Lloyd Stevens saw Glenn Jackson take the radio from the house of Lloyd Stevens. From Preston Jackson's house he saw Glenn stop at the above house and went into his house as subject was leaving the house. Lloyd hollered at him to stop. Time was unknown. 'Lloyd said that he was in the '61 Buick (later) reported to be stolen by William R. Spears.' That's the only time, the only place, that I said that there was any witness that saw him do anything."

On cross-examination Officer Wright testified that the statement made by Spears was after the appellant had been arrested and when Spears came to the police station and filed a complaint on the missing automobile. Officer Wright testified that the statement was what Spears told him and was in his own handwriting as related by Spears.

William R. Spears testified that he reported his automobile stolen; that he did not see the appellant steal the automobile, and did not tell Officer Wright, or anyone else, that he saw who stole the automobile. On this point Spears testified as follows:

> "I made the statement that I was asleep when it was stolen or when it was missing and that they came and told me about it."

He testified that Jim Haddock, a brother-in-law of Lloyd Stevens, came to his house and told him about the automobile being gone. He says that this occurred at 4 a.m., and then Spears continued as follows:

> "Q. Did you tell Deryl Wright, the officer right here, that Lloyd Stevens told you that he saw Glenn Jackson go into Preston Jackson's

house and carry out a radio?

A. Yes, I did.

Q. You told Deryl Wright that?

A. Yes, so it was told to me.

Q. Who told you that?

A. Lloyd Stevens.

Q. What did Lloyd Stevens tell you?

A. That he saw the car stop at his house and went in and got the radio and came back and got in my car and left with it.

Q. Did he say that it was Glenn Jackson, that he saw Glenn Jackson?

A. He said he thought it was Glenn Jackson."

It is well settled that permission to withdraw a plea of guilty is a matter that rests in the sound discretion of the trial court, and where the permission is denied, every presumption on appeal is in favor of the proper exercise of the trial court's discretion. *McClain* v. *State*, 165 Ark. 48, 262 S. W. 987; *Greene* v. *State*, 88 Ark. 290, 114 S. W. 477; *Joiner* v. *State*, 94 Ark. 198, 126 S. W. 723; *Duncan* v. *State*, 125 Ark. 4, 187 S. W. 906. So the question, and the only question actually presented on this appeal, is whether the trial court abused its discretion in denying the appellant's motion to withdraw his pleas of guilty.

It is obvious that appellant's intended defense would be that of drunkenness to the extent that he was incapable of committing the crimes with which he was charged, but from the evidence of the manner in which

the automobile was driven and parked, and the manner in which the culprit entered the house and returned to the automobile; and further, from the thoroughness with which the appellant was examined by the trial judge before his pleas of guilty were accepted, we are of the opinion that the trial court was justified in accepting the appellant's pleas of guilty. We are also of the opinion the trial court did not abuse its discretion in refusing to permit the appellant to withdraw his pleas of guilty under the facts in this case.

The judgment is affirmed.